UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RODION VASILEVSKII,

    *Petitioner,*

v.

KRISTI NOEM, *et al.*,

    *Respondents*.

Civil Action No. 25 - 2173 (SLS)

Judge Sparkle L. Sooknanan

## ORDER

The Petitioner in this case, Rodion Vasilevskii, has had an unduly arduous journey in his effort to escape persecution in his home country. After being lawfully paroled into the United States in 2022, Mr. Vasilevskii started building a life for himself. He obtained employment as a medical assistant, got married, and became a stepfather. Then, without warning, he was torn from his family and placed in civil immigration detention. For the past eight months, he has been held without a hearing at various detention facilities, including the United States Naval Station at Guantanamo Bay, Cuba. Last week, Mr. Vasilevskii was released from detention as a new lawful permanent resident of the United States, *see* Resp't Ex. R, ECF No. 43-2; 8 U.S.C. § 1255(b), rendering this action moot.

Regrettably, Mr. Vasilevskii's journey was made more difficult by someone who should have made it easier—his former attorney George Alex Lambert. The Court writes to address a Notice of Voluntary Dismissal, ECF No. 33, filed by Mr. Lambert on February 2, 2026. For the reasons explained below, the Court strikes that notice as unauthorized. Mr. Lambert improperly filed it without Mr. Vasilevskii's consent prior to his release from custody. The Court dismisses

this action without prejudice pursuant to the Joint Stipulation of Dismissal, ECF No. 44, filed by Mr. Vasilevskii's current attorney and the Government after his release from custody.

## BACKGROUND

Mr. Vasilevskii is a Russian native of Ukrainian and Tatar ancestry. Pet'r Ex. 15 at 143, ECF No. 3; Pet'r Ex. 19 at 156, ECF No. 3. On December 28, 2022, Mr. Vasilevskii applied for admission to the United States. Pet'r Ex. 37 at 264, ECF No. 3; Resp't Ex. A at 1, ECF No. 17-2. He was lawfully paroled into the United States at the Port of Entry in Hidalgo, Texas, on humanitarian grounds. *See* Pet'r Ex. 39 at 282, ECF No. 3; Decl. Charlene Tamargo (First Tamargo Decl.) ¶¶ 5–6, ECF No. 17-10. Mr. Vasilevskii filed an asylum application on March 7, 2023, within the one-year post-parole deadline for doing so. *See* Pet'r Ex. 37 at 265 (deadline); Pet'r Ex. 38 (asylum application), ECF No. 3. And the U.S. Customs and Immigrations Services notified Mr. Vasilevskii that he could "remain in the United States until [his] asylum application is decided." Pet'r Ex. 41 at 288, ECF No. 3.

In September 2023, Mr. Vasilevskii was authorized to seek employment in the United States. Pet'r Ex. 24 at 186, ECF No. 3. He went on to work as a licensed medical assistant in Florida, where he assisted individuals suffering from Parkinson's and Lewy Body diseases, among others. Pet'r Exs. 31–33, ECF No. 3. Mr. Vasilevskii has no criminal record and is a federal taxpayer. *See* Pet'r Exs. 9, 24, 33, ECF No. 3. In May 2024, Mr. Vasilevskii married a U.S. citizen and became a stepfather and caregiver to their daughter, a U.S. citizen diagnosed with autism spectrum disorder, who depends on his care and support. Pet'r Exs. 3 ¶ 3, 7–8, 14, ECF No. 3.

In February 2025, the Department of Homeland Security (DHS) issued a notice instructing Mr. Vasilevskii to appear for removal proceedings on June 2, 2025. Resp't Ex. A at 1. Mr. Vasilevskii complied with the notice and appeared in immigration court as scheduled. First Tamargo Decl. ¶¶ 8–9. There, DHS dismissed the proceedings and instead issued an expedited

removal order seeking to remove Mr. Vasilevskii without further court proceedings. First Tamargo Decl. ¶ 9; Resp't Ex. B, ECF No. 17-3. Mr. Vasilevskii was immediately taken into custody. First Tamargo Decl. ¶ 10. At the end of June, Mr. Vasilevskii was transferred from a detention facility in Florida to Guantanamo Bay. First Tamargo Decl. ¶¶ 11–12.

Meanwhile, shortly after he was detained, Mr. Vasileveskii and his wife filed an application to adjust Mr. Vasilevskii's immigration status to permanent residency based on his marriage to a U.S. citizen. *See* Pet'r Exs. 25–26, ECF No. 3.

On July 3, 2025, Mr. Vasilevskii's sister retained George Alex Lambert to represent Mr. Vasilevskii. *See* ECF No. 36-1. A few days later, on July 9, 2025, while detained at Guantanamo Bay, DHS conducted a credible fear interview in connection with Mr. Vasilevskii's asylum application. Resp't Ex. G, ECF No. 17-7. The asylum officer "attempted to call George Lambert" but was "unable to connect" with him. *Id.* at 3. Mr. Vasilevskii thus elected to complete the interview without counsel, and the asylum officer determined that he did not show credible fear of persecution or torture in Russia. *Id.*; First Tamargo Decl. ¶ 13.

That same day, Mr. Lambert filed a Petition for Writ of Habeas Corpus on behalf of Mr. Vasilevskii in this Court, challenging his detention by DHS. *See* ECF Nos. 1, 6.[1] That Petition named as Respondents (among others): "ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security" and "TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement." Original Pet. at 1, ECF No. 6. In its Opposition, the Government argued that the Petition was procedurally defective because it failed to name a proper respondent. Original Opp'n at 7, ECF No. 17. Specifically, the Government stressed: "Alejandro Mayorkas is

---

[1] Mr. Lambert attempted to file the Petition on July 8, 2026. *See* ECF No. 1. Due to clerical errors, an errata with a corrected petition was needed, and the Petition was not properly filed until July 9, 2026. *See* ECF No. 6.

no longer the Secretary of DHS and Tae Johnson is no longer Acting Director of ICE. And, critically, neither held their respective former positions during any period of the pendency of this petition." *Id.* at 8. On October 5, 2025, Mr. Lambert amended the Petition pursuant to Federal Rule of Civil Procedure 15(a)(1) to name the correct officials. *See* Amended Pet., ECF No. 22. The Government opposed the Amended Petition, arguing, among other things, that the earlier procedural defects could not be cured by amending the Petition. *See* Second Opp'n, at 8 n.5, ECF No. 26.[2] Further complicating matters, by the time the Amended Petition was filed, Mr. Vasilevskii had been transferred from Guantanamo Bay to a detention facility in Florida. *See* Amended Pet. at 3; Pet'r Resp., ECF No. 15. In later briefing, Mr. Lambert justified the misnomers in the Petition as follows: "At the time of filing (July 9, 2025), Secretary Mayorkas and Attorney General Garland were, on information and belief, the publicly listed officeholders on certain websites, according to the law office's notes." Reply at 12, ECF No. 28.

On January 29, 2026, the Parties appeared for a status conference regarding the Amended Petition. *See* Status Conf. Tr., ECF No. 40. There, the Court expressed concern over the "careless mistakes" made by Mr. Lambert that had caused "a number of procedural issues." Status Conf. Tr. 3:1–9. The Court further informed Mr. Lambert that his briefing was difficult to understand, *id.* 3:1–5, and it expressed incredulity at Mr. Lambert's representation that he believed that Merrick Garland was the Attorney General as of July 2025, *id.* 3:10–17. The Court further informed Mr. Lambert that it was strongly considering referring him to the bar given his level of advocacy to that point. *Id.* 3:15–17.

---

[2] The Government also challenged the merits arguments in the Amended Petition as "brief," "inchoate," inconsistent, and full of concessions. Second Opp'n at 16–17, ECF No. 26.

The Court went on to discuss the status of the Amended Petition in light of the various procedural complications. It informed the Parties that it would likely only be able to hear two of the arguments raised in the Amended Petition but not two others (which could only be heard in the Southern District of Florida). *Id.* 7:5–9. And it noted that the two arguments that were properly before this Court were raised only in a skeletal way and would require further briefing. *Id.* 8:16–21. The Court instructed Mr. Lambert to discuss two options with Mr. Vasilevskii: (1) continuing the action in this District on the two issues properly before the Court, or (2) moving to dismiss this action without prejudice so Mr. Vasilevskii could file all his claims in Florida. *Id.* 3:18–23, 7:17–23. The Court asked Mr. Lambert to file a notice on the docket reflecting his client's preference. *Id.* 3:21–23 ("I'm going to ask you to consult with your client, and if you're going to continue representing Mr. Vasilevskii, file something and let me know how your client wants to proceed."), 9:24–10:2 ("So, Mr. Lambert, with all of that, I'm going to ask you to speak with your client and file a notice on the docket next week. I will give you a week to do that. If you need more time or your client needs more time, that's fine.").

## REQUEST TO DISMISS CASE

On February 2, 2026, Mr. Lambert filed a Notice of Dismissal, purporting to dismiss Mr. Vasilevskii's claims without prejudice. ECF No. 33. In light of the Court's instructions during the status conference, the Court assumed that the Notice was the result of discussions between Mr. Lambert and Mr. Vasilevskii. *See* Hr'g Tr. 5:15–17, ECF No. 42. The Court soon learned otherwise. Shortly after Mr. Lambert filed the Notice, the Court received an email from Mr. Vasilevskii's sister, informing the Court that the Notice "was filed contrary to Petitioner's expressed interests" and "without Petitioner's authorization, consent, or instruction." Notice of

5

Objection to Unauthorized Voluntary Dismissal at 1–2, ECF No. 36.[3] And she stated that Mr. Lambert's filing of the notice was motivated by his unilateral decision not to proceed further in this Court. *Id.* at 2.

At a show cause hearing on February 5, 2026, Mr. Lambert confirmed that he did not consult with Mr. Vasilevskii before filing the Notice of Dismissal. Hr'g Tr. 11:10–16:4. In fact, Mr. Lambert could not recall having had any communication with his client since August 2025. *Id.* 13:12–14:4. Mr. Lambert largely blamed Mr. Vasilevskii for this lack of communication. He said that based on his research "to find out whether there is a way to contact" Mr. Vasilevskii "proactively" at the Glades Detention Facility, he determined that "only the inmates have the ability to make phone calls" at that detention center. *Id.* 11:14–21, 13:1–5. He thus did not attempt to call Mr. Vasilevskii himself. *Id.* 15:21–24. And he represented that he did not attempt an in-person visit to the facility because it was too far from his office. *Id.* 14:12–16. When the Court pressed Mr. Lambert on whether it is appropriate to dismiss a lawsuit without authorization from the client, Mr. Lambert could not provide a straight answer. *Id.* 16:5–25.

At the hearing, Mr. Vasilevskii's sister confirmed that Mr. Lambert "acted directly contrary to [her] brother's express wishes" by filing the Notice of Dismissal and explained that

---

[3] Mr. Vasilevskii's sister also provided the court with a translated copy of an email that Mr. Lambert sent to her after filing the notice purporting to dismiss the case. In that email, Mr. Lambert said: "The petition in Washington worked – your brother has been returned from Guantanamo. The judge doesn't want to handle the case of a person in Florida and suggested transferring the proceedings to Florida, which has been done. If I am needed to refile the habeas corpus petition in Florida, please let me know." Notice of Objection to Unauthorized Voluntary Dismissal at 3–4. Even a cursory review of the record would show that this email was at minimum highly misleading. *See* Hr'g Tr. 7:2–24.

Mr. Lambert's action was part of a larger pattern of concerning conduct throughout his representation. *Id.* 27:1–28:8.[4]

Based on this record, the Court finds that the Notice of Dismissal filed by Mr. Lambert on February 2, 2026, was an "unauthorized" filing that misrepresented that his client wished to dismiss this case. *Cf. Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002). Thus, the Court strikes the Notice, ECF No. 33, from the docket. *See* Fed. R. Civ. P. 12(f).

## SUBSEQUENT DEVELOPMENTS

On February 13, 2025, Mr. Vasilevskii's application for adjustment of status was approved, and he became a lawful permanent resident of the United States. *See* ECF No. 43. He was thus released from DHS custody after over eight months of detention. ECF No. 45. Given his release, the Government and Mr. Vasilevskii's new counsel have filed a Stipulation of Dismissal, ECF No. 44. The Court dismisses this action without prejudice based on that filing.

---

[4] At that hearing, the Court removed Mr. Lambert as Mr. Vasilevskii's attorney at Mr. Vasilevskii's request. The Court notes that shortly after it scheduled the show cause hearing, Mr. Lambert filed a motion to withdraw as Mr. Vasilevskii's counsel. Mot. Withdraw, ECF No. 34. In that filing, Mr. Lambert made several concerning representations, including advising the Court he had not been in touch with his client for "several months," *id.* at 1, and adopting the Government's prior jurisdictional arguments—arguments against his client's interests that were directly contrary to arguments he had made in advocating for Mr. Vasilevskii, *compare id.* at 2, *with* Second Response 7–11; Reply 11–12.

## CONCLUSION

The Court strikes the Notice of Dismissal, ECF No. 33, filed by George Alex Lambert as unauthorized. The Court dismisses this action without prejudice based on the Parties' Stipulation of Dismissal, ECF No. 44. The Clerk of the Court is directed to terminate this case from the active docket.

                                                                                                SPARKLE L. SOOKNANAN
                                                                                                United States District Judge

Date:   February 18, 2026